[No. 29441.   Department Two.   April 17, 1945.]

*In the Matter of a Petition for Hearing by* CONTINENTAL CAR-NA-VAR CORPORATION, *Appellant,* v. E. B. RILEY, *as Commissioner of Unemployment Compensation and Placement, Respondent.*[1]

[1]Reported in 157 P. (2d) 724.

*Catlett, Hartman, Jarvis & Williams,* for appellant.

*The Attorney General* and *Bernard A. Johnson, Assistant,* for respondent.

MALLERY, J.—This is an appeal from a superior court judgment affirming a decision of the commissioner of unemployment compensation and placement of the state of Washington that the appellant, Continental Car-Na-Var corporation, is subject to assessments and liable for contributions to the Washington state unemployment compensation fund. The following are the facts as found by the respondent:

"The petitioner is an Indiana corporation doing an interstate business; its principal office and manufacturing plant are located at Brazil, Indiana, and it is the 'world's largest manufacturer specializing in floor treatments for large areas.' At all times since July 1, 1941, and for several years prior thereto, the petitioner has been represented in this state by W. D. Estep, a Washington resident, under a 'Contractor's Agreement' (Exhibit A) made and entered into by the parties thereto on the seventh day of April 1937. The petitioner and Estep, hereinafter referred to as the company and contractor, respectively, continually performed their respective covenants in accordance with the said agreement during the period covered by the assessment.

"The company has, for several years, maintained a place of business in this state at 2012 Third Avenue, Seattle, where

quantities of its merchandise are stored; the company's name is painted on the door and it pays the rent, heat and light.

"The agreement provides, among other terms and conditions, that the contractor shall be granted '. . . the right and privilege to solicit and submit orders for merchandise manufactured and sold or for sale by the Company, subject to its approval in the State of Washington . . . subject to the published sales price list and the policies of said Company contained herein or as may from time to time be outlined by the Officers of the Company'; '. . . the Contractor has no authority to complete any sale for the products of the Company. All orders obtained by the Contractor shall be forwarded by him to the Company at its home office, Brazil, Indiana, for approval and acceptance.'

"The contractor was required to obtain all orders upon regulation order blanks furnished by the company, submit reports of all interviews and calls and furnish the company with copies of correspondence relating to its business; a minimum of accepted orders totaling $700.00 a month was set by the company. The contractor was remunerated for services by a commission on the sales in accordance with a confidential commission price list. He was in charge of and made his headquarters at the company's local place of business; a telephone was listed in the directory under the company name and he was required to render an inventory of all company property on hand at the close of each month. Estep provided his own transportation and paid his own operating expenses. He did not receive a salary or drawing account and he could and did at times sell noncompetitive products obtained from other manufacturers.

"The testimony tends to show some slight deviation in actual practice from the terms and provisions of the agreement; however, the company concedes that its relationship with the contractor is covered by the agreement. 'The violation of any of the terms of this contract shall operate as a forfeiture thereof at the option of the other party . . . by the giving of a ten days' notice in writing. . . .' The agreement could be terminated by the company at any time the contractor failed to produce the required minimum orders or violated any of the other conditions.

"The place of business at 2012 Third Avenue, Seattle, was equipped with some furniture (desk, chair, etc.) and the contractor conducted most of the company's business there when in Seattle; besides storing the company's property he received his mail and telephone calls at that office."

We quote the appellant's assignments of error:

"(1) The Chief Appeal Examiner assigned by the Commissioner of Unemployment Compensation and Placement of the State of Washington erred in finding and concluding that W. D. Estep was not free from control by the Appellant Company, and in not finding and concluding that he carried on other entirely independent, but similar, kinds of business to that of the appellant and in not finding and concluding his use of any part of the appellant's property or space was incidental to his business and not a part of the contractual relationship between them. (2) The Chief Appeal Examiner erred in making his findings of fact and decision of September 27, 1943. The Commissioner of Unemployment Compensation and Placement erred in affirming it by his decision of November 13, 1943. (3) The Chief Appeal Examiner erred in his findings and conclusions that W. D. Estep performed services in the State of Washington for appellant for wages and that he was an employee and the Company an employer within the meaning of the Unemployment Compensation Act of the State of Washington and that the relationship was subject to the terms of that Act. The Commissioner erred in affirming such findings and conclusions and the Superior Court erred in affirming the decision and ruling of the Commissioner. (4) The Superior Court erred in entering its judgment of June 8, 1944, affirming the decision of the Commissioner and rendering judgment against the appellant."

Under its third assignment of error, appellant contends that it is not doing business in this state, i. e., not engaged in intrastate commerce, and that the unemployment compensation act was not intended to cover interstate business. We do not agree that appellant is not doing business in this state. As was said in *International Shoe Co. v. State*, *ante* p. 146, 154 P. (2d) 801:

"That where there is a systematic and regular solicitation of orders by an agent or agents of the corporation, resulting in a continuous shipment of goods into the state where the agents are operating, together with the maintenance of a permanent office in the state by the corporation, the corporation can be said to be doing business in that state so as to make it amenable to process by the courts of such state."

However, it is immaterial whether or not it was doing an intrastate business, since, even if its business is interstate,

it is under the act. As was said in the *International Shoe Co. v. State, supra:*

"It would seem that the act clearly contemplates that contributions shall be paid into the unemployment compensation fund for such employment as we have in this case. Assuming that appellant is engaged in interstate commerce by reason of the fact that its agents take orders in this state for goods to be shipped from another state, yet we are of the opinion that the contributions exacted by the unemployment compensation act from appellant do not constitute an unlawful burden on interstate commerce. Probably to meet such an argument as is made by appellant herein, and to permit the unemployment compensation acts of the several states to cover the largest possible range of employees, Congress passed the following statute:

'No person required under a state law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the state law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce.' " 26 U. S. C., § 1616 (a).

Indeed, the statute itself is very clear upon this point. Rem. Rev. Stat (Sup.), § 9998-119 [P. C. § 6233-317] (g) (1), provides:

" 'Employment,' subject to the other provisions in this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

■ Appellant also claims that, since the employee works for it only from fifty to eighty per cent of his time, he is not covered by the act. Appellant cites Rem. Rev. Stat. (Sup.), § 9998-119 (g) (2):

"The term 'employment' shall include an individual's entire service performed within or both within and without this state if: (i) The service is localized in this state; or (ii) the service is not localized in any state but some of the service is performed in this state and (a) the base of operations, or if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or (b) the base of operations or place from which such service is directed or controlled is not in any state in which

some part of the service is performed, but the individual's residence is in this state."

Obviously, this section is not applicable to the case at bar, where all the services of the employee are rendered in the state. Part-time services are not excluded from the act. See Rem. Rev. Stat. (Sup.), § 9998-119 (g) (4) (i) (ii). See, also, *Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995; *Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89.

In support of appellant's first assignment of error, it contends that it should be excluded from the act because it meets the requirements of Rem. Rev. Stat. (Sup.), § 9998-119 (g) (1) (5) (i) (ii) (iii) on the ground that the employee is (1) free from control; (2) outside the usual course of appellant's business and (3) is engaged in an independently established business. We do not agree that this is the case.

The statute cited above is as follows:

"(5) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the director that:

"(i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business, of the same nature as that involved in the contract of service."

As to (i), the employee sells appellant's goods subject to the approval of the appellant. As to (ii), it is the appellant's business to sell the identical goods handled by the employee who is therefore not engaged in an enterprise outside of the usual course of appellant's business. The employee concededly occupies the premises of the appellant. As to (iii), the fact that the employee may perform some

services with which the appellant is not concerned, does not alter the fact that he renders some for the appellant. To the extent, and only to the extent, that he is remunerated for services for the appellant, is the appellant liable for contributions to the unemployment compensation fund.

The appellant fails to meet any of the tests of the statute. It must have met all three conjunctively to be excluded from the act.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and SIMPSON, JJ., concur.

July 7, 1945. Petition for rehearing denied.

[1]Reported in 157 P. (2d) 728.